**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACOB WILSON, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | Case No.: 1:24-cv-08809-DEH |
| XEROX HOLDINGS CORPORATION, STEVEN J. BANDROWCZAK, and XAVIER HEISS, | Hon. Dale E. Ho |
| Defendants. | |

**MEMORANDUM OF LAW IN REPLY AND**
**FURTHER SUPPORT OF RICHARD A. HARRISON AND THE**
**HARRISON LIVING TRUST'S MOTION FOR APPOINTMENT**
**AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

Adam M. Apton
LEVI & KORSINSKY, LLP
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Richard A. Harrison and the*
*Harrison Living Trust and Proposed Lead*
*Counsel for the Class*

Mr. Harrison, individually and on behalf of the Harrison Living Trust dated December 14, 2004, respectfully submit this brief to address a false argument raised in opposition to his motion for lead plaintiff. That argument, as written, provides an incorrect statement of the case law concerning the adequacy and typicality requirements under Rule 23(a). Specifically, a movant for lead plaintiff is *not* inadequate or atypical simply because he or she trades an option security or engages in an advanced trading strategy. The case law is clear on this point. Consequently, movant Jacob Wilson's arguments to the contrary are mistaken and unfounded.

The Class in this action consists "of all persons and entities that purchased or otherwise acquired *Xerox securities* between January 25, 2024 and October 28, 2024, inclusive, and who were damaged thereby." Complaint, Dkt. No. 1, ¶¶1, 37 (emphasis added). "Securities" refers to both common stock and options. *See Farooq Khan v. Chargepoint Holdings, Inc.*, No. 23-cv-06172-PCP, 2024 U.S. Dist. LEXIS 88645, at *12 (N.D. Cal. May 16, 2024) ("the class definition expressly includes purchasers of 'securities,' which necessarily encompasses both options and common stock"). Mr. Harrison, individually and through his trust, purchased both common stock and options, thereby clearly falling within the Class definition. *See* Dkt. No. 25-1.

Mr. Harrison lost approximately $15,750 in connection with his Xerox investment. *See* Dkt. No. 25-2. His common stock purchases resulted in a loss of approximately $17,670 while his option transactions yielded a gain of approximately $1,925. *See id*. Importantly, the income he received from his option transactions was the intended result of a trading strategy referred to as a "covered call" trade. The accompanying Supplemental Declaration of Richard A. Harrison explains the "covered call" trading strategy in more detail and confirms that all relevant times Mr. Harrison had invested long in the stock, *i.e.*, he intended for the price of Xerox stock to increase over time. *See* Supplemental Declaration of Richard A. Harrison, ¶¶4-7. A "covered call"

investment strategy does *not* make Mr. Harrison a "short seller" or otherwise render him inadequate or atypical, as Mr. Wilson claims. *See* Dkt. No. 32 at 1-3.

Judge Lewis J. Liman addressed this exact argument in *Chauhan v. Intercept Pharmaceuticals*, No. 21-cv-00036 (LJL), 2021 U.S. Dist. LEXIS 13369, at *19-20 (S.D.N.Y. Jan. 25, 2021). In pertinent part, Judge Liman explained, "Rice responds that he is not a day trader or short seller but rather that he engaged in a 'covered call' investment strategy. A covered call is an options trading strategy designed to hedge against risk. 'Covering an option permits the writer to limit the downside risk associated with the transaction in exchange for diminished potential profits. The maximum loss for the writer of a covered call option that triggers, after accounting for the premium received, is the difference between the strike price and the purchase price. But the upside is lower because the writer of a covered call option must actually purchase the underlying asset, cutting against the profits if the option expires.'" *Id*. at *20 (quoting E*merson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220, 229 (E.D.N.Y. 2019)).

Judge Liman went on to conclude that, "'Courts have rejected the argument that the use of sophisticated investment strategies disqualifies a party from serving as lead plaintiff or necessarily undermines reliance, particularly at this stage of the litigation.' . . . Absent evidence that Rice did not rely on the integrity of the market price, which has not been offered at this stage, there is no reason to disqualify Rice as lead plaintiff." *Id*. (quoting *In re Turquoise Hill Res. Ltd.*, No. 20-cv-8585 (LJL), 2021 U.S. Dist. LEXIS 8840, at *28 (S.D.N.Y. Jan. 15, 2021)).[1] Notably, movant

---

[1] *See also Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-CV-8925 (KMW), 2015 U.S. Dist. LEXIS 36409, at *19-20 (S.D.N.Y. Mar. 23, 2015) (lead plaintiff was "not subject to unique defenses" when it "relied on [] valuation statements when it purchased [] stock, even if it did so as a hedge" because "[i]nvestment strategies intended to mitigate risk do not render a movant atypical or inadequate"); *In re IMAX Sec. Litig.*, No. 06-cv-06128 (NRB), 2011 U.S. Dist. LEXIS 41709, at *20-23 (S.D.N.Y. Apr. 14, 2011) (holding that the use of a merger arbitrage investment strategy

Rice's attorneys in *Chauhan* also represent Mr. Wilson in this action, which further undermines the legitimacy of the argument they are presently asserting against Mr. Harrison.

Mr. Harrison's losses come almost entirely from his common stock transactions, and Mr. Wilson has offered nothing in the way of evidence to show that Mr. Harrison did not rely on the integrity of the market for Xerox securities. To the contrary, Mr. Harrison confirms that he in fact did rely on the market price for Xerox securities and at all relevant times intended for his investment to appreciate in value. *See* Supplemental Declaration of Richard A. Harrison at ¶¶4, 8. Consequently, Mr. Wilson has no meritorious basis for challenging Mr. Harrison's status as the presumptive lead plaintiff in this action. *See Chauhan*, 2021 U.S. Dist. LEXIS 13369, at *20-21 (rejecting argument that option trades rendered movant atypical or inadequate because facts did not show "situation where the majority of Rice's losses, or trades, were through options").

Mr. Wilson cites a handful of cases to support his argument. These cases are distinguishable and/or entirely not relevant. To be sure, in *Rodriguez v. Draftkings Inc.*, No. 21-cv-05739 (PAE), 2021 U.S. Dist. LEXIS 219489, at *20-21 (S.D.N.Y. Nov. 12, 2021), the movant at issue had a trade history showing a "'conspicuously high' quantum of short sales or 'cover purchases'" unlike Mr. Harrison's transaction history. While the court acknowledged that short-sellers may be disqualified, the argument is invalid where the "short sales [are] executed as part of a sophisticated investment strategy that undermines the idea that the short-seller failed to rely on the integrity of the market price." *Id*. at *21-22 (citing *Chauhan*, 2021 U.S. Dist. LEXIS 13369, at *20-21). Further, even though the movant in *Rodriguez* was a short-seller, that alone was not

---

does not subject a presumptive lead plaintiff to a unique defense and therefore does not rebut the presumption of adequacy); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 109 (S.D.N.Y. 2004) ("The fact that these traders have divergent motivations in purchasing shares should not defeat the fraud-on-the-market presumption absent convincing proof that price played no part whatsoever in their decision making.").

enough to disqualify him. *See id*. at *22 ("Nonetheless, Downs has not articulated why Kaintz's short selling bespeaks a lack of reliance on the market price. Accordingly, on the present record, the Court cannot find that Kaintz's short selling would make him an atypical class representative.").

Mr. Wilson also cites *In re Critical Path*, 156 F. Supp. 2d 1102, 1109-10 (N.D. Cal. 2001). In that case, the movant Columbus Capital "sold short 20,000 shares" of stock. The court denied the movant's motion for lead plaintiff because the movant's "trading pattern" "raise[d] the question of whether the seller was actually relying on the market price." *Id*. at 1110. Unlike the movant in *Critical Path*, Mr. Harrison is *not* a short-seller but instead an experienced investor who implemented a "covered call" strategy in support of his underlying belief in the stock.

*Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529, at *20-22 (E.D. Tex. Feb. 28, 2014), is also irrelevant. In that case, the movant "bought and sold his entire JCP portfolio on the same or next trading day on at least ten different instances" during the class period. The court held that this trading activity suggested the movant was not relying on the defendants' statements but instead the "market's daily volatility." *Id*. at *21. On top of this, the movant was also "short selling shares and buying to cover those short sales," which further evidenced his atypicality. *Id*. Again, Mr. Harrison did not short sell any shares but instead sold (and later bought) call options as part and parcel of a "covered call" investment strategy.

Mr. Wilson's final case is equally inapposite. In *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377 (D.N.J. 1998), the court granted in part a motion for class certification. In pertinent part, the court rejected a proposed class representative because he "both purchased and sold all of his Tower Ordinary Shares before either of the purported corrective statements. These shares were sold at a profit. Thus, Meruelo will be subject to the defense of the inability to prove damages

4

resulting from the alleged misrepresentation." *Id*. at 392. The court noted further that the proposed representative also engaged in "short sales," thereby raising further questions about his ability to rely on the "fraud on the market theory." *Id*. Mr. Harrison did not purchase and sell his shares before the corrective disclosure (*i.e.*, he was not an in-and-out trader) and did not engage in short selling. Thus, Mr. Wilson's supposed legal support for opposing Mr. Harrison's motion is meritless.

Dated: February 11, 2025                    Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By:
Adam M. Apton (AS-8383)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Richard A. Harrison and the
Harrison Living Trust and Proposed Lead
Counsel for the Class*

5